JAMES M. FRENCH, ADMR. v. CARKIN, STICKNEY & CRAM.

**President of Corporation Cannot Testify to Transaction With Deceased Partner of Firm Suing Corporation.**
  In an action between a partnership and a corporation, evidence of the president of the corporation as to a claimed arrangement of a matter in controversy with a member of such partnership

French v. Carkin.

is not admissible under Sec. 5242 R. S. (Séc. 11495 G. C.) ᴋ ter the death of such partner.

ERROR.

*Theodore Alvord,* for plaintiff.

*H. L. Peeke,* for defendant.

**KING, J.**

When the case came on for trial the defendant sought a continuance and offered the affidavit of its attorney, H. L. Peeke. to show that W. S. Carkin was a material witness for the defendant, without whose testimony the defendant could not safely proceed to trial, and showing further that the said W. S. Carkin was the president of the defendant corporation, and setting forth, with some legal conclusions, that he had an arrangement with E. M. Colver, the deceased partner, by which the account had been settled, or, perhaps, that before the services had all been rendered he had had an arrangment with E. M. Colver whereby the said Colver had agreed that he would perform all the services that were required in matters in which Carkin, Stickney & Cram were parties for $100.00, and that thereafter he had paid to the said E. M. Colver the said sum of $100.00. That is in substance what is set forth in the affidavit. It might not perhaps all be reconcilable with the facts in the case, but it contains enough to show that he claimed to have made an arrangement with Colver that either the account as rendered had been settled for $100.00 and paid, or that he had an arrangement by which the services to be rendered had been agreed to be for the price of $100.00.

It perhaps is not material just exactly what he claimed he would testify to any further than to an arrangement he had made with E. M. Colver in his lifetime by which this account had been fully settled. As to the payment of it, that amounted to nothing more than the fact that the corporation had paid $100.00, which was admitted by the plaintiff, in fact, the $100.00 claimed to have been paid and which the defendant claimed was in settlement had been applied on account by the firm of Colver & Colver before the death of E. M. Colver. So there was no dispute as to the amount that was paid, the only question being as to its effect; and the claim that it was a settlement

in full of this account or under the arrangement made by him with E. M. Colver in his lifetime.

The affidavit as submitted was examined by the opposite party and it was admitted that if W. F. Carkin was here he would so testify; and thereupon the case was not continued but they went to trial. On the trial the affidavit was offered as the evidence of W. F. Carkin. It was objected to and some portions of it ruled out, other portions received. The portions ruled out related to the claimed arrangement with E. M. Colver in his lifetime, and it is claimed that that was erroneous. It is a question of considerable importance and some difficulty. It was ruled out upon the ground that W. E. Carkin was the representative of this corporation and that under the statute, Sec. 5242 R. S. (Sec. 11495 G. C.) which prohibits an opposite party from testifying in an action brought by or against an administrator or executor of a deceased person, that Mr. Carkin was of such a character as a witness that he would not be competent to testify to anything that took place between him and the decedent.

There are several provisions of the statute, which I will notice later. I first want to look at this proposition from the standpoint which is taken here by the plaintiff in error, and upon that we are cited to two cases which, it is claimed, uphold the theory that Mr. Carkin's testimony here was competent. One is that of *Cochran* v. *Almack*, 39 Ohio St. 312, 314, where it was held that the defendant is a competent witness to transactions with a deceased agent of the plaintiff, though not occurring in his presence, if within the scope of such agent's authority. This was not an action brought by an administrator or an executor of a deceased person, but the owner and holder of a promissory note brought suit upon it against the maker. The maker answered admitting his liability but set up that he had paid to apply upon it $200.00 and therefore was entitled to that much more credit than was given him. The plaintiff denied the payment. The issue was whether it was paid, and on the trial of the issue thus made the defendant, upon whom was the burden of proof, went upon the witness stand as a witness in his own behalf and was permitted, over the previous objection, as a com-

petent witness to prove the payment, although it was admitted that such alleged payment was made to Wheeler Cochran in the presence of the plaintiff and that Wheeler Cochran was the agent of the plaintiff and that he had since died. That, of course, makes an entirely different case than we have here. The parties to the action are alive and in court and able to testify, competent under the statutes and one of them goes upon the witness stand and testifies to a transaction with the plaintiff's agent who has since the transaction unfortunately died.

The Supreme Court held it was competent and affirmed the judgment of the court of common pleas admitting it, and yet so able a lawyer and judge as Judge Okey of the Supreme Court founded considerable of an argument in a dissenting opinion in favor of the objection to that testimony. After citing all the statutes and several of the cases cited under them and showing what had been the spirit of the legislature in its passage of those statutes, and in the numerous amendments that have been made since their original passage, he says (p. 319):

"Experience at length satisfied the legislature that, however full and explicit, however carefully prepared, such limitations and restrictions might be injustice would sometimes be done by adhering literally to the terms of the statute. The wit of man could not provide in that way for all cases concerning which provision should be made. Sometimes injustice would arise by excluding evidence which should, in justice. be admitted, but more frequently by admitting evidence which should be excluded. The result was the incorporation of the above quoted clause in the statute, which, construed as it should be, not strictly but liberally, fairly excluded the evidence of Almack as to the payment alleged to have been made to one who could neither meet him face to face nor answer him by deposition. I disagree entirely with the narrow construction placed on this remedial statute. Indeed, if Almack was competent, under such circumstances, to prove the payment by his own oath, I am at a loss to imagine. a case in which the provision should be applied.

"In my opinion the clause quoted will occasion no serious inconvenience in practice. It is not likely to be applied by judges, either in admitting or excluding evidence, in such man-

ner as to do injustice; and where testimony is received or excluded by force of it, I apprehend the ruling should not be reversed unless it clearly appears that injustice had been done. However that may be, the clause is the declared will of the legislature, and we are not at liberty to disregard it."

A short time after that, another case (*Keyes* v. *Gore*, 42 Ohio St. 211), arose in the Supreme Court and Judge Okey was still upon the bench and he delivered the opinion of the court. It was argued he had undergone a change of heart on that point. In that case it was held:

"In an action to recover real property, in which the plaintiffs relied upon a deed claimed to have been made to their father, since deceased, where the question was whether the deed had in fact been executed and delivered, the widow of the decedent, not being a party, is a competent witness to prove such execution and delivery, notwithstanding the last clause of Sec. 5242 R. S. (Sec. 11495 G. C.); and the fact that her right to dower in the premises may depend on the validity of the deed, will make no difference."

Now, perhaps all of that does not go very far towards deciding this question, but cite one or two general authorities which indicate what the courts have held generally as to the policy of these statutes. Abbott, Trial Evidence, 60-61; Greenleaf, 333; *Lawson* v. *Bank*, 1 Ohio St. 200, 210; *Goaf* v. *Werthweine*, 1 Handy 20.

In the conclusion which in a discussion of this matter we have arrived at, we are satisfied, however, to rest on the reading of the statutes themselves and such construction as we think these sections ought to receive.

It is said in argument that the sections except Sec. 5240 are sections which are limitations upon the right of a witness to testify, and that all persons are competent witnesses and made so by Sec. 5240 R. S. (Sec. 11493 G. C.), and that the other sections which simply limit their right to testify with respect to certain matters or as against certain persons or parties are limitations only upon that right to testify; and when we come to the clause that relates to the construction of these statutes, which shall give effect to their spirit as well as their letter, we

French v. Carkin.

are confined only to the enlarging powers of the statute rather than their limiting and restrictive ones.

We don't think that is a correct statement or a proposition that is applicable. The first Sec. 5240 says all persons are competent witnesses, except those of unsound mind, children under ten years, etc.

Then Sec. 5241 R. S. (Sec. 11494 G. C.) provides the following persons shall not testify, and they are persons who shall not testify on account of certain relations. There is in that this provision, in clause 5,

"A person who, if a party would be restricted in his evidence under section five thousand two hundred and forty-two, shall, where the property or thing is sold or transferred by an executor, administrator, guardian, trustee, heir, devisee, or legatee, be restricted in the same manner in any action or proceeding concerning such property or thing."

Section 5242 R. S. (Sec. 11495 G. C.) provides:

"A party shall not testify where the adverse party is the guardian or trustee of either a deaf and dumb or an insane person, or of a child of a deceased person, or is an executor or administrator, or claims or defends as heirs, grantee, assignee, devisee or legatee, of a deceased person, except ——"

The first is a general disqualification clause. It is followed by certain others which limit that disqualification. To what?

One of those limitations I might as well notice is the second.

"When the action or proceeding related to a contract made through an agent, by a person since deceased, and the agent is competent to testify as a witness, a party may testify on the same subject."

"If a party, or one having a direct interest, testify to transactions or conversations with another party, the latter may testify as to the same transactions or conversations."

"If a party offer evidence of conversations or admission of the opposite party, the latter may testify concerning the same conversations or admissions."

"In an action or proceeding by or against a partner or joint contractor, the adverse party shall not testify to transactions with, or admissions by, a partner or joint contractor since de-

ceased, unless the same were made in the presence of the surviving partner or joint contractor; and this rule shall be applied without regard to the character in which the parties sue or are sued."

It might be questionable for a moment what that clause means, but while it may have more than one application, I think it is evident that it is applicable to a case where under the law of Ohio a partnership sues by its firm name. Then there are certain other exceptions that are not material here; and now, at the end of these, the legislature have adopted this, which, as Judge Okey says, and well says: "After having made numerous other amendments, after having incorporated into this statute various limitations and exceptions as cases arose or were called to their attention, they found that perhaps the subject of legislating upon each case as it might arise would be indefinite, and so they say: "When a case is plainly within the reason and spirit of the last three sections, though not within the strict letter, their principles shall be applied."

What are the principles to be applied in this case, or what is the principle to be applied under this statute, not within its letter but within its spirit? Isn't it to exclude where a claim or defense is based upon a transaction with a deceased person, and the title to the plaintiff in the case, or the defendant, as the case may be, comes from the deceased person as to the evidence relating to the validity of that claim or to its satisfaction and payment, if you please, so far as that evidence is made up of conversations, agreements or contracts with the person who is dead and who at the time of the transaction owned an interest in it and had an interest in it, had title to it—that such evidence shall be excluded? The Supreme Court might well say when the parties were all in court and alive and are competent to testify, they will not exclude the testimony of one of them who had had a conversation with a deceased person who, if living, would be nothing but a witness in the case and would never occupy any other relation, even though he had been connected with the transaction as an agent; but the parties were in court and each one was competent to testify to all the facts that related to the claim, whatever it was. So they admit the testimony of

French v. Carkin.

the widow, who is not a party to the case at all and who has no direct interest in the transaction, because a judgment upon it could not in any wise bind her, as they are careful to say in their opinion. They say she was competent to testify like any other witness, because whichever way this judgment had gone it would never bind her if she claimed to have interest in the property. In other words, if she had dower interest in it, she could have brought her action and this judgment would not be a bar nor have any effect upon her right.

This claim is to be treated exactly as if it was the claim of a deceased person. The statute had said it should be. It says where it comes from a partnership or a community of interest and one of the community owners is deceased, that then the opposite party shall not testify to anything that was said or done with him in his lifetime. Now, the opposite party in this case is a corporation, and transacts all its business by agents, but it has two classes, those which the law creates and those which are created by the acts of those legal agents. Its board of directors and its president are its living representatives to transact numerous classes of business, in fact, all the business within the scope of its charter where necessary to carry its prescribed objects and purposes into effect, but these may employ thousands of others as agents. They are special agents, they are not of the class of the president and of the board of directors and secretary. Now, the president of a corporation speaks for it in a multitude of cases. If the corporation be sued, he may employ lawyers without authority from the board of directors; he may pay and settle with lawyers without authority from the board of directors; he may commence actions to recover property belonging to the corporation or rights in property, or assets that it has, without consultation with the board of directors. He has, in fact, unlimited power to do all those things which will carry on and enable the corporation to carry on the purposes for which it was organized. He could not by his power dispose of the very corporate entity; he could not dispose of the whole of the corporate property, but if the business of the corporation was that of selling goods, he could sell goods and so he could collect the pay, and so he could compromise indebtedness, and so

he could do everything except to mortgage the corporate entirety for the security of its debts, and for that he must have the assent of the board of directors; but he could do those things that are necessary to carry out the purposes of the corporation.

Now, when sued, why should not this rule be invoked against his testifying to conversations with a deceased person? This account is a fair illustration of what the statute is intended to do. Here is an account that begins in April and runs along item by item until the last of August. This witness makes an affidavit, or an affidavit is made for him, which says that he would testify here that in September or before September 6, maybe after all these services were rendered, he made an arrangement with E. M. Colver by which he was to get $100 in full of everything that he had or expected to do, which sum was thereafter paid. He is corroborated in that by the fact that $100 is paid and by the letter that accompanied the draft, to the extent that he was to receive $100 or something. It there indicates it was for securing one bond for releasing one dredge, and the account shows that other dredges were released and other services were rendered, amounting, as I say, to something over $400.00. If that is what he intended to testify, he is contradicted by his own admissions that he had paid other amounts of money on this account besides the $100.00. The payments ran up, as he claimed, and as was admitted by the plaintiff, to about $250. Well now, it would seem this is a very pertinent case to apply a rule like that, and we are unanimously of the opinion, though it may be a question of some doubt, that this section should be applied in its spirit to exclude exactly that kind of testimony, and we do not find any error in this judgment, and therefore affirm it.

**Haynes** and **Parker, JJ.,** concur.